UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. *06-80197-CR-Ryskamp/Hopkins*

18 USC § 371
18 USC § 1341
18 USC § 1343
18 USC § 1956 (h)
18 USC § 1956 (a)(1)(A)(i)
18 USC § 1956 (a)(1)(B)(i)
18 USC § 2

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JUNG BAE KIM, aka "John Kim",
WON SOK LEE,
YUNG BAE KIM,
KL GROUP, LLC,
KL FLORIDA, LLC
KL TRIANGULUM MANAGEMENT, LLC, and
SHORELAND TRADING, LLC

        Defendants.
_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.    KL Group Fund, LLC  KL Financial Group Florida, LLC, KL Financial Group DB

Fund, LLC, KL Financial Group IR Fund, LLC,  KL Financial Group DC Fund, LLC, and KL

Triangulum Fund Group, LLC were Hedge Funds organized between 1999 and 2003 in Nevada or

Florida. A hedge fund is a form of mutual fund structured as a private investment partnership usually limited to a set number of high net worth members. The fund operates as an investment vehicle for pooled investments in securities, both long and short positions.

2. Defendants KL Group, LLC, KL Florida, LLC and KL Triangulum Management, LLC were Limited Liability Companies with offices in Irvine, California and West Palm Beach, Florida and were established to advise and control the Hedge funds listed in paragraph one above.

3. The Hedge Funds and the companies established as investment advisors were controlled by defendants JUNG BAE KIM, ("John Kim"), WON SOK LEE, ("Won Lee"), and YUNG BAE KIM, ("Yung Kim"), who marketed all of the funds through investor meetings, websites, and offering memoranda. The defendants claimed to use a proprietary day-trading system developed by John Kim. Through the investment advisor companies, Won Lee, Yung Kim and John Kim purported to earn a set management fee and additional fees tied to the "profits" from trading.

4. Between 2000 and 2005, the various KL Hedge Funds raised over $194 million from at least 250 investors. After the initial investment was made, investors received quarterly statements from the applicable Hedge Fund setting forth, among other things, the purported profits or losses for that quarter.

Though Hedge Funds did not have to register with the Securities and Exchange Commission ("SEC"), their trades were required to be made through a Broker-Dealer that was registered with the SEC. In turn, the Broker-Dealer had to "clear" the trade with a firm that has access to the particular stock exchange where the stock trades. Some Broker-Dealers have their own access to the stock exchange, while others must clear their customer's trades through a separate clearing firm that has access.

5. Defendant Shoreland Trading, LLC , ("Shoreland"), was a Broker-Dealer registered with

2

the SEC and was ostensibly owned and controlled by defendant Won Lee after June 2003.  Prior to June 2003, KL used several different Broker-Dealers to complete trades.  Thereafter, Shoreland executed trades for the various KL Hedge Funds and had no other unrelated clients.  Shoreland used several different clearing firms to complete trades, some of which terminated their relationship with KL or Shoreland as a result of large recurring trading losses.

## COUNT 1

## CONSPIRACY

6.  From in or about 2000 until in or about February 2005, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

JUNG BAE KIM, aka "John Kim",
WON SOK LEE,
YUNG BAE KIM,
KL GROUP, LLC ,
KL FLORIDA, LLC,
KL TRIANGULUM MANAGEMENT, LLC, and
SHORELAND TRADING, LLC

did knowingly and willfully combine, conspire, confederate, agree and reach a tacit understanding with each other to commit offenses against the United States, that is: (a) wire fraud, in violation of Title 18, United States Code, Section 1343; and (b) mail fraud, in violation of Title 18, United States Code, Section 1341.

## OBJECT OF THE CONSPIRACY

7.  It was the object of the conspiracy to obtain money from investors under false pretenses by purporting to earn significant profits from day-trading when, in truth, millions of dollars were being lost and millions more were taken by the defendants for personal expenditures without ever having been invested.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants sought to accomplish the object of the conspiracy included the following:

8. Defendants claimed that John Kim devised, and KL owned, a "proprietary" day trading program that enabled the KL Hedge Funds to earn profits on trades far in excess of their competitors.

9. Through offering materials, a website and oral representations, between 2000 and 2005, defendants claimed or caused others to claim that the KL Group Fund (hereinafter "the Main Fund") earned in excess of 100% per year for its investors. In truth, almost from its inception, the Main Fund suffered losses each and every quarter of its existence.

10. As a result of these false claims, numerous investors from Florida and other parts of the United States provided money to defendants for investment in the Main Fund and the other KL Hedge Funds .

11. Defendants caused the money received from investors to pass through numerous bank accounts at Bank of America and Northern Trust Bank of Florida. Some of the money was siphoned off for the personal use of defendants John Kim, Won Lee, and Yung Kim, payment of business expenses, and for payments of false profits to old investors. The investor funds that were actually used to buy stock usually did not result in profitable trades. Rather, between 2003 and 2004, the Main Fund lost approximately $63 million. By this time, the Main Fund included funds from investors in other KL Hedge Funds as well.

12. Defendants used their offices to entice potential investors, giving them the false impression that the KL companies were successful Hedge Fund Advisors.

13. Despite suffering substantial losses, defendants spent large sums of money setting up opulent offices in West Palm Beach with a view of the Atlantic Ocean. Large sums of money were

4

expended on cutting edge computer equipment, flat panel television technology and high-end office furnishings. Dozens of computer screens and large flat panel televisions adorned the walls of the office, each seemingly revealing trades being made. Defendant John Kim created an impressive trading area for himself set apart from other employees that contained numerous large and small computer terminals. Recruitment of some prospective investors included a tour of the KL offices where they observed defendant John Kim actively trading.

14. The KL office space also housed a large bull-pen area where a number of traders sat at computer terminals making trades. Most of these traders, referred to as "proprietary traders", were given small amounts of money to trade and most of them lost money on a daily basis. The presence of these traders, however, helped recruit investors by making KL appear to be a vibrant and successful day-trading operation.

15. It was part of the conspiracy that, beginning as early as 2000, one or more of the defendants diverted investor funds to pay personal living expenses rather than investing the money as promised.

16. It was further part of the conspiracy that, one or more of the defendants falsely represented to various clearing firms that money in the accounts of either KL or Shoreland originally derived from the personal funds of either John Kim or Won Lee in order to qualify for more favorable stock purchasing leverage. In truth, nearly all funds in KL and Shoreland was derived from outside investors.

17. After an initial investment was made, the defendants caused statements to be sent to each investor. These quarterly statements purported to report the true earnings of the Hedge Fund applicable to the investor and applied the "earnings" to that investor's particular share of the fund, resulting in an investor balance. These quarterly statements usually reported outstanding returns,

5

lulling victims further into believing they had found an excellent investment and causing many of them to keep their money invested and, in many cases, invest even more money.

18.  As money was being lost through failed trading by defendant John Kim, more money was needed to keep the scheme afloat.  To obtain the large amount of money needed to perpetuate the scheme over time, defendants caused other people to recruit investors.  One recruiter used by defendants John Kim and Won Lee was an attorney known to the grand jury who had an office in the same building as KL in West Palm Beach.  The attorney, who had a large number of wealthy clients, was paid large commissions and was made a principal of some of the KL Funds in return for introducing many of his clients to KL.

19.  To convince the attorney to invest his own funds, and to continue to attract millions of dollars of investment funds from his clients, defendants caused false documents to be created showing false investment returns. Defendants John Kim and Won Lee also worked together to create counterfeit letter-head and account statements of nationally-known clearing firms, such as Spear Leads Kellog, ("Spear Leads"), Penson Financial Services, and Wedbush Morgan Securities, inserted false trading figures on the documents and provided them to the attorney, and later to others known to the grand jury.  Through this process, defendants were able to convince the attorney, others,  and ultimately the investors that the KL Main Fund and other KL hedge funds were not only making profitable trades but also that the money invested was being forwarded for investment as represented.

20.  Defendants John Kim and Won Lee caused the attorney to provide KL with bogus legal bills for the precise amounts of commissions owed.

21.  In order to convince investors, including the attorney, that the KL Main Fund and other KL hedge funds were making profitable trades, John Kim,  along with Won Lee and Yung Kim,

6

falsely and fraudulently represented that John Kim made a profit of nearly $20,000,000 in a single day by taking long and short positions in a single stock.

22.  In order to convince investors that the KL Main Fund and other KL hedge funds were profitable, Won Lee, Yung Kim and John Kim caused the creation of an internet website devoted to KL.  The KL web site allowed investors located anywhere in the world to access their particular account data using the internet.  Won Lee, Yung Kim, and John Kim knowingly caused materially false and fraudulent data to be uploaded onto the KL internet website for the purpose of lulling investors into believing that the KL Main Fund and other KL hedge funds were profitable, and falsely justifying KL's entitlement to performance fees earned by KL's profit making.

23.  In order to deceive investors and others into believing that audits and other accurate financial reporting of the KL Hedge Funds were being performed by independent accountants, in July, 2004 defendant Won Lee caused a Delaware company named PAFS Corporation to be formed, which letters stood for "Pegasus Accounting and Financial Services".  Won Lee caused an employee of KL Hedge Funds to lease space in California to house the company.  Defendant John Kim directed that this employee hire an accounting staff, which consisted of at least three persons  to work full-time for Pegasus.  In setting up Pegasus, and hiring such persons, John Kim and Won Lee intended to foster the false impression that Pegasus was an independent accounting firm hired by KL Hedge Fund to create independent financial statements, and objectively accurate K-1 partnership statements.  A Pegasus accountant was directed to create financial statements for the KL hedge funds and to create individualized IRS forms commonly known as K-1s, to be provided to individual investors in connection with their personal federal income tax returns.

24.  The Pegasus accountant  was not permitted to independently request copies of records

from the firms that cleared Shoreland's trades. Rather the Pegasus accountant was required to accept such records only from defendants or KL employees designated by defendants.

25. Won Lee caused the creation of counterfeit documents that were shown to a Pegasus accountant. Thereafter, Won Lee caused this accountant to attest falsely to an equity statement that fraudulently represented that Shoreland Trading had over $250,000,000 in equity as of October 18, 2004, when in truth and in fact the actual equity was less than $10,000,000.

26. It was further part of the conspiracy that KL sent at least $ 96,000,000 in investor funds to various Broker-Dealers, but received back less than $12,000,000 from those Broker-Dealers.

27. It was further part of the conspiracy that KL officers intentionally provided counterfeit documents to independent, outside accountants in order to deceive the accountants and KL investors into believing funds had been invested as represented, rather than embezzled or otherwise diverted to pay alleged profits to old investors.

28. It was further part of the conspiracy that in or about January 2005 John Kim caused millions of investor dollars in KL-controlled accounts to be diverted to personal brokerage accounts he and Won Lee controlled that were involved in futures trading.

## OVERT ACTS

29. In furtherance of the conspiracy, and to effect its aims and objects, one or more of the co-conspirators committed at least one of the following overt acts, among others,  in the Southern District of Florida and elsewhere:

a.  The mailings and interstate wire communications as set forth hereafter at Counts 2 through 18 are incorporated herein and further alleged as though stated herein as individual overt acts done in furtherance of the conspiracy.

b. On or about July 10, 2000, Won Lee and John Kim caused a checking account to be opened at Bank of America in the name of KL Group LLC (account number 02995-02063) with Lee and Kim having signature authority over the account.

c. On or about August 20, 2001, Won Sok Lee and John Kim caused a checking account to be opened at Bank of America in the name of KL Group LLC (account number 02993-02663) with Won Sok Lee and John Kim having signature authority over the account. Later, on October 17, 2002, Yung Bae Kim was added as having signature authority.

d. On or about May 15, 2002, Won Lee sent an electronic mail to John Kim enclosing counterfeit monthly statements from Spear Leeds, a clearing firm.

e. On or about October 15, 2002, Won Lee sent an e-mail communication to John Kim enclosing a false investment report intended to mislead RK, an attorney known to the grand jury.

f. On or about December 12, 2002, Won Lee sent an e-mail communication to RK, falsely claiming that AB, a KL employee, had invested over $1,000,000 with KL Financial, and that AB's father had invested $5,000,000, which representation also was false.

g. On or about December 19, 2002, John Kim, Won Lee and Yung Kim caused others known to the grand jury to open an account at Bank of America in the name of KL Financial Group Florida, LLC., (account number 0054-8000-1543)

h. In or about February 2003, the exact date being unknown, at the behest of John Kim, AB knowingly and falsely touted non-existent investment returns to a prospective investor, LR.

i. On or about June 17, 2003 Won Lee sent an electronic mail communication to John Kim for the purpose of deceiving, RK.

9

j. On or about June 17, 2003, Won Lee caused a counterfeit Spear Leads investment summary to be transmitted to RK, with the intent to mislead RK and other investors.

k. On or about June 17, 2003, Won Lee sent an e-mail communication to John Kim enclosing a counterfeit Bank of America monthly statement intended to fool RK.

l. On or about November 24, 2003, Yung Kim sent an electronic mail communication containing a fraudulent Shoreland Trading LLC bank statement  to Won Lee for the purpose of deceiving RK.

m. On or about December 12, 2003, John Kim, Won Lee and Yung Kim caused others known to the grand jury to open an account at Northern Trust Bank of Florida in the name of KL Triangulum Fund LLC (account number 1710012392) with Won Sok Lee and others known to the grand jury having signature authority over the account.

n. On various dates between January 2004 and December 2004,  Won Lee sent electronic mail communications to a KL employee, MB, and enclosed false investment return data that was printed out on quarterly investment return statements and mailed out to investors via the U.S. mails.

o. On or about February 10, 2004, Won Lee caused a checking account to be opened at Bank of America in the name of KL GROUP FUND (account number 02999-21098).

p. On or about February 11, 2004, via an e-mail communication, Won Lee caused AB, a KL employee, to update the KL website with false investment results for the first quarter of 2004.

q. In or about May, 2004, Won Lee met with representatives of Penson Financial Services in Dallas, Texas and lied to one or more Penson principals concerning the source of monies that Shoreland Trading LLC was trading, and the reason behind prior large-scale losses by Shoreland while trading with another clearing firm.

r. On or about July 7, 2004, John Kim and Won Lee communicated through e-mails concerning the design of business cards for Pegasus Accounting and Financial Services to make it appear separate and unrelated to KL.

s. On or about July 28, 2004, Won Lee caused Pegasus Accounting and Financial Services to be formed in the State of Delaware.

t. Between August and September 2004, John Kim caused the hiring of various employees who worked at Pegasus Accounting.

u. In the Fall of 2004, Won Lee caused the creation of a document entitled "KL Group Fund, 2004 Month -- Month Net Returns" which contained fraudulent investment return information, and thereafter caused the document to be transmitted to numerous investors.

v. On or about August 26, 2004, John Kim traveled to Atlanta, Georgia to solicit prospective investors, and told several persons he was the sole trader for KL.

w. On or about October 22, 2004, defendant Won Lee caused the payment of expenses related to Pegasus Accounting and Financial Services.

x. After July 28, 2004, the exact date being unknown, Won Lee caused a fictitious statement to be prepared on blank letter head of Pegasus Accounting asserting that Shoreland had assets of at least $253,000,000, and thereafter caused a Pegasus accountant to falsely attest to the document.

y. On or about December 14, 2004, defendant John Kim told numerous persons that he had made approximately $20,000,000 trading in a stock commonly known as "RIMM", Research in Motion.

z. At some time after December 14, 2004, the exact date being unknown to the grand jury,

11

defendant Won Lee sent an electronic mail to an investor known to the grand jury, LR, enclosing what purported to be an authentic spreadsheet summary depicting the RIMM trades of defendant John Kim.

aa. On or about December 15, 2004, Won Lee sent an e-mail communication via the internet in which he falsely claimed that the previous day the fund had a gain of approximately $21,000,000.

bb. In or about December 21, 2004, Won Lee provided counterfeit clearing firm documents to KP, a person known to the grand jury.

cc. On or about January 14, 2005,  Won Lee caused statements purporting to be from Spear Leeds and Penson, respectively, to be presented to a forensic accountant, WM, who had been hired by an investor known to the grand jury.   One or more of these documents also purported to show that approximately $192,000,000 in assets had been transferred from Shoreland Trading LLC's account at Spear Leeds to a new clearing firm, Penson Financial Services, ("Penson"), when in truth only approximately $3 million had been transferred to Penson.

dd. On or about January 21, 2005, Won Lee sent an e-mail communication in which he falsely claimed that the beginning balance for the KL fund in January, 2005 was $276,000,000.

ee. On various dates between 2003 and February 2005, the exact dates being unknown to the grand jury, Yung Kim and Won Lee created fraudulent quarterly investor statements that were sent to investors in the various KL hedge funds.

ff. On various dates between 2003 and February 2005, the exact dates being unknown to the grand jury, Yung Kim uploaded false and fraudulent investment return information on the KL website for the purpose of misleading investors.

12

All in violation of Title 18, United States Code, Section 371.

## Counts 2-18
### (Mail Fraud & Wire Fraud, 18 U.S.C. §§ 1341 and 1343 and 2)

30.     The Grand Jury re-alleges and incorporates herein by reference the General

Allegations Section and paragraph 29 with all its subparagraphs contained in the Overt Acts

section in Count One of the Indictment.

31.     From in or around October 2000, through in or around March 2005, the exact dates

being unknown to the Grand Jury, in Palm Beach County, in the Southern District of Florida, and

elsewhere, the defendants,

JUNG BAE KIM, aka "John Kim",
WON SOK LEE,
YUNG BAE KIM,

knowingly and willfully devised, and intended to devise, a scheme and artifice to defraud and for

obtaining money by means of material, false, and fraudulent pretenses, representations, and

promises, knowing that the pretenses, representations and promises were false when made, and for

the purpose of executing this scheme and artifice, and attempting so to do, did knowingly:

(a)  transmit or cause to be transmitted certain writings and signals by means of wire

communication in interstate commerce, in violation of Title 18, United States Code,

Section 1343; and

(b)  cause any matter or thing to be sent or delivered by the United States mails or

private or commercial interstate carrier, in violation of Title 18, United States Code,

Section 1341.

13

## OBJECT OF THE SCHEME AND ARTIFICE

32. It was the object of the scheme to obtain money from KL Hedge Fund investors under false pretenses by purporting to earn significant profits from day trading when, in truth, millions of dollars were being lost and millions more were taken by the defendants for personal expenditures without ever having been invested

33. It was further the object of the scheme and artifice to defraud to mislead various clearing firms as to the nature and source of KL funds in order to gain favorable trading leverage to which KL was not entitled.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE

34. The Grand Jury re-alleges and incorporates herein by reference paragraphs 8 through 28 of the Manner and Means Section in Count One of the Indictment.

35. It was further a part of the manner and means that the defendants would and did divert investor funds to payment of the defendants' personal expenses and investments, and to the payment of old investors with new investors' monies.

36. It was further a part of the manner and means that in order to prevent the untimely withdrawal of investor funds the defendants falsely reported astronomical returns on the purchase and sale of a single stock in one day.

## EXECUTION OF THE SCHEME

### Counts 2–9
### (Wire Fraud, 18 U.S.C. §§ 1343 and 2)

37. On or about the dates set forth below as to each count, in the Southern District of

14

Florida, and elsewhere, for the purpose of executing the above-described scheme and artifice, and

attempting so to do, the defendants charged in each respective count, knowingly caused to be

transmitted by means of wire communication in interstate commerce certain writings or signals as

described below:

| COUNT | DEFENDANT | DATE | WIRE COMMUNICATIONS |
|---|---|---|---|
| 2 | JUNG BAE KIM, WON SOK LEE | December 12, 2002 | Internet e-mail communication from California to Florida from Won Lee, John Kim to attorney "RK" |
| 3 | WON SOK LEE, JUNG BAE KIM, YUNG BAE KIM | December 22, 2003 | Internet e-mail communication from KL Group LLC to investor CC |
| 4 | WON SOK LEE, JUNG BAE KIM, YUNG BAE KIM | April 1, 2004 | Wire transfer of $9,500,000 from KL Triangulum account at Northern Trust to Shoreland Bank of America account |
| 5 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | December 16, 2004 | Internet e-mail communication to investor GM concerning daily investment result |
| 6 | WON SOK LEE, JUNG BAE KIM, YUNG BAE KIM | December 21, 2004 | Internet e-mail communication concerning Penson account statement |
| 7 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | February 11, 2005 | Internet e-mail communication to investor LR concerning RIMM trade |

| COUNT | DEFENDANT | DATE | WIRE COMMUNICATIONS |
|---|---|---|---|
| 8 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | March 3, 2005 | Internet e-mail communication from KL Group LLC to investor NG concerning 4th quarter 2004 investment results |
| 9 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | March 3, 2005 | Internet e-mail communication from KL Group LLC to investor NG concerning 4th quarter 2004 investment results |

All in violation of Title 18, United States Code, Sections 1343, and 2.

## EXECUTION OF THE SCHEME

### Counts 10-18
### (Mail Fraud, 18 U.S.C. §§ 1341 and 2)

38.    On or about the dates set forth below as to each count, in the Southern District of Florida, and elsewhere, for the purpose of executing the above-described scheme and artifice, and attempting so to do, the defendants charged in each respective count, knowingly caused to be sent or delivered any matter or thing by the Postal Service, or deposited or caused to be deposited any matter or thing to be sent or delivered by private or commercial interstate carrier as described below:

| COUNT | DEFENDANTS | DATE | MAIL MATTER |
|---|---|---|---|
| 10 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | December 26, 2003 | End of Year Report for 2003 mailed by KL to investor MF |

16

| COUNT | DEFENDANTS | DATE | MAIL MATTER |
|-------|-----------|------|-------------|
| 11 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | July 2004 | KL Group Florida Fund Quarterly statement for 2nd quarter of 2004 mailed to investor JCC, Sr. |
| 12 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | July 2004 | KL Group Fund Quarterly statement for 2nd quarter of 2004 mailed to investor JCC, Jr. |
| 13 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | August 19, 2004 | Mailing to investor SW confirming deposit of $77,214.81 |
| 14 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | January 15, 2005 | KL Group Fund Quarterly statement for 4th quarter of 2004 mailed to investor NG |
| 15 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | January 15, 2005 | KL Group Fund Quarterly statement for 4th quarter of 2004 mailed to investor CC |
| 16 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | January 15, 2005 | KL Group Fund Quarterly statement for 4th quarter of 2004 mailed to investor NG |
| 17 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | January 15, 2005 | KL Group Fund Quarterly statement for 4th quarter of 2004 mailed to investor SW |
| 18 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | January 15, 2005 | KL Group Fund Quarterly statement for 4th quarter of 2004 mailed to investor DK |

All in violation of Title 18, United States Code, Sections 1341 and 2.

### Count 19
### (Conspiracy to Commit Money Laundering, 18 U.S.C., §1956(h))

39.     The General Allegations section and paragraph 29 of this Indictment, are realleged and incorporated herein by reference.

40.  From at least as early as October 2000,  and continuing through approximately March

17

2005, the exact dates being unknown to the grand jury, at Palm Beach County, in the Southern District of Florida, and elsewhere, the defendants,

JUNG BAE KIM, aka "John Kim",<br>
WON SOK LEE,<br>
YUNG BAE KIM,

did knowingly combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury to commit offenses under Title 18, United States Code, Sections 1956, as follows:

(a)     To conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, that is  mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, and with the intent to promote the carrying on of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and

(b)     To conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of specified unlawful activity, that is mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

**Counts 20 - 33**

**(Promotion Money Laundering, 18 U.S.C. §§ 1956(a)(1)(A)(i), and (2))**

41.     The General Allegations section of this Indictment, and paragraph 29 are realleged

18

and incorporated herein by reference.

42.     On or about the dates enumerated as to each count, in Palm Beach County, in the Southern District of Florida and elsewhere, the defendants, as identified below, did knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, mail fraud and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343, with the intent to promote the carrying on of the specified unlawful activity and while conducting and attempting to conduct such financial transaction knew the property involved in the financial transaction, as set forth in each count below, represented the proceeds of some form of unlawful activity:

| Count | Date | Defendant | Transaction and Amount |
|-------|------|-----------|------------------------|
| 20 | October 3, 2002 | JUNG BAE KIM, | Transfer of $550,000 from John Kim's Bank of America account to Kochman & Braun Trust account at Northern Trust |
| 21 | March 10, 2003 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | $50,000 check from KL to "RK" |
| 22 | April 21, 2003 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | Payment in form of KL check 10106 issued to "HSY" for $150,000 |
| 23 | February 17, 2004 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | KL check 10214 for $131,946.30 issued to "RK" |
| 24 | April 1, 2004 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | Wire transfer of $5,500,000 from Shoreland account at Bank of America to KL Group LLC, Bank of America account |
| 25 | May 17, 2004 | WON SOK LEE | Transfer of $398,878.80 from Won Lee account to 1st American Title Insurance Company |

| Count | Date | Defendant | Transaction and Amount |
|-------|------|-----------|------------------------|
| 26 | May 26, 2004 | WON SOK LEE | $500,000 wire transfer from KL bank account 2063 to Won Lee personal account at E-Trade Securities |
| 27 | June 9, 2004 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | KL check 5246 issued to Pranich & Associates for $229,235.90 |
| 28 | June 18, 2004 | WON SOK LEE | $500,000 wire from Won Lee Bank of America account 6946 to SwissQuote Bank |
| 29 | June 30, 2004 | YUNG BAE KIM, JUNG BAE KIM, WON SOK LEE | KL check 5296 for $136,117.78 issued to Esperante Partners LLC |
| 30 | January 05, 2005 | YUNG BAE KIM, JUNG BAE KIM, WON SOK LEE | KL check 5767 for $81,750 issued to Caler Donten Levine Druker Porter & Veil |
| 31 | February 7, 2005 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | KL check 10013 in the amount of $1,290,000 paid to investor "GN" |
| 32 | February 7, 2005 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | Wire transfer of $39,574.29 from KL 6809 account to KL Group Fund IV account |
| 33 | February 16, 2005 | JUNG BAE KIM, WON SOK LEE, YUNG BAE KIM | Transfer of $5,000,000 to Falcone Development from Skyline Futures Management, Bank of America account |

All in violation of Title18, United States Code, Sections 1956(a)(1)(A)(i) and 2.

### Counts 34 – 35
### (Concealment Money Laundering, 18 U.S.C. §§ 1956(a)(1)(B)(i), and (2))

43.     On such dates and in the amounts set forth as to each count below, at Palm Beach

County, in the Southern District of Florida, and elsewhere, the defendants named therein did

knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, mail fraud and wire fraud, in violation of Title 18, United States Code, Sections 1341 and 1343, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| COUNT | DATE | DEFENDANT | TRANSACTION |
|-------|------|-----------|-------------|
| 34 | June 30, 2004 | WON SOK LEE | $100,000 wire transfer to Paradise Enterprises, Ltd. |
| 35 | January 10, 2006 | JUNG BAE KIM | Transfer of $300,000 from Nicole Kim account to JNL Futures, Wachovia account |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(I) and (2).

A TRUE BILL

_____
FOREPERSON

_____ for
R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

_____
STEPHEN CARLTON
ASSISTANT UNITED STATES ATTORNEY

_____
ANDREW LOURIE
ASSISTANT UNITED STATES ATTORNEY

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

vs.

JUNG BAE KIM, aka "John Kim", ET AL.,

Defendants.
_____/

CASE NO. 06·80197·CR·Ryskamp/Hopkins

## CERTIFICATE OF TRIAL ATTORNEY*

**Superseding Case Information:**

New Defendant(s)          Yes _____   No _____
Number of New Defendants _____
Total number of counts   _____

**Court Division**: (Select One)

_____ Miami    _____ Key West
_____ FTL    __X__ WPB    _____ FTP

I do hereby certify that:

1.  I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.  I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.  Interpreter:    (Yes or No)    __No__
    List language and/or dialect    _____

4.  This case will take    __20__ days for the parties to try.

5.  Please check appropriate category and type of offense listed below:
    (Check only one)                                     (Check only one)

    | | | | | |
    |---|---|---|---|---|
    | I | 0 to 5 days | _____ | Petty | _____ |
    | II | 6 to 10 days | _____ | Minor | _____ |
    | III | 11 to 20 days | X_____ | Misdem. | _____ |
    | IV | 21 to 60 days | _____ | Felony | X_____ |
    | V | 61 days and over | _____ | | |

6.  Has this case been previously filed in this District Court? (Yes or No)    __No__
    If yes:
    Judge: _____    Case No. _____
    (Attach copy of dispositive order)
    Has a complaint been filed in this matter?    (Yes or No)    __No__
    If yes:
    Magistrate Case No.    N/A
    Related Miscellaneous numbers:    06-8181-LRJ
    Defendant(s) in federal custody as of    N/A
    Defendant(s) in state custody as of    N/A
    Rule 20 from the    N/A    District of _____

    Is this a potential death penalty case? (Yes or No)    __No__

7.  Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 2003?    _____ Yes    __X__ No

8.  Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999?    _____ Yes    __X__ No
    If yes, was it pending in the Central Region?    _____ Yes    _____ No

9.  Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    _____ Yes    __X__ No

10. Does this case originate from a matter pending in the Narcotics Section (Miami) prior to May 18, 2003?    _____ Yes    __X__ No

_____
STEPHEN CARLTON
ASSISTANT UNITED STATES ATTORNEY
Admin. No. A5500011

*Penalty Sheet(s) attached

REV.1/14/04

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# <u>PENALTY SHEET</u>
### Page 1 of 2

**Defendant Name:**  Jung Bae Kim, a/k/a "John Kim"          **Case No.:** 06-80197-CR-Ryskamp/Hopkins

**Count # 1**

18 USC §371

Conspiracy to Commit mail/wire fraud

**Max. Penalty:** 0-5 years imprisonment, $250,000.00 fine

==================================================================

**Count #** 2 through 9

18 USC §§1343 and 2

Wire fraud

**Max. Penalty:** 0-20 years imprisonment, $250,000.00 fine

==================================================================

**Count #** 10 through 18

18 USC §§1341 and 2

Mail fraud

**Max. Penalty:** 0-20 years imprisonment, $250,000.00 fine

==================================================================

**Count #** 19

18 USC §1956(h)

Conspiracy to commit money laundering

**Max. Penalty:** 0-20 years imprisonment, $500,000.00 fine or 2x value of laundered funds

==================================================================

**Count #** 20 through 24

18 USC §§1956(a)(1)(A)(i) and 2

Promotion money laundering

**Max. Penalty:** 0-20 years imprisonment, $500,000.00 fine or 2x value of laundered funds

==================================================================

**Count #** 27

18 USC §§1956(a)(1)(A)(i) and 2

Promotion money laundering

**Max. Penalty:** 0-20 years imprisonment, $500,000.00 fine or 2x value of laundered funds

==================================================================

**Count #** 29 through 33

18 USC §§1956(a)(1)(A)(i) and 2

Promotion money laundering

**Max. Penalty:** 0-20 years imprisonment, $500,000.00 fine or 2x value of laundered funds

==================================================================

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## <u>PENALTY SHEET</u>
### Page 2 of 2

**Defendant Name:**  Jung Bae Kim, a/k/a "John Kim"      _Case No.: _06-80197-CR-Ryskamp/ Hopkins

**Count #** ___35 _____
18 USC §§1956(a)(1)(B)(i) and 2
Concealment money laundering_____
**Max. Penalty:** _0-20 years imprisonment, $500,000.00 fine or 2x value of laundered funds____
===================================================================

*Refers only to possible term of incarceration, does not include
possible fines, restitution, special assessments, parole terms,
or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

**Defendant Name:**  Won Sok Lee                              **Case No.:** 06-80197-CR. Ryskamp/ Hopkins

**Count # 1**

18 USC §371

Conspiracy to Commit mail/wire fraud

**Max. Penalty:** 0-5 years imprisonment, $250,000.00 fine

======================================================

**Count # 2 through 9**

18 USC §§1343 and 2

Wire fraud

**Max. Penalty:** 0-20 years imprisonment, $250,000.00 fine

======================================================

**Count # 10 through 18**

18 USC §§1341 and 2

Mail fraud

**Max. Penalty:** 0-20 years imprisonment, $250,000.00 fine

======================================================

**Count # 19**

18 USC §1956(h)

Conspiracy to commit money laundering

**Max. Penalty:** 0-20 years imprisonment, $500,000.00 fine or 2x value of laundered funds

======================================================

**Count # 21 through 33**

18 USC §§1956(a)(1)(A)(i) and 2

Promotion money laundering

**Max. Penalty:** 0-20 years imprisonment, $500,000.00 fine or 2x value of laundered funds

======================================================

**Count # 34**

18 USC §§1956(a)(1)(B)(i) and 2

Concealment money laundering

**Max. Penalty:** 0-20 years imprisonment, $500,000.00 fine or 2x value of laundered funds

======================================================

*Refers only to possible term of incarceration, does not include
possible fines, restitution, special assessments, parole terms,
or forfeitures that may be applicable.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

**Defendant Name:** Yung Bae Kim

**Case No.:** 06-80197- cr- Ryskamp/
Hopkins

**Count #** 1
18 USC §371
Conspiracy to Commit mail/wire fraud
**Max. Penalty:** 0-5 years imprisonment, $250,000.00 fine
=================================================================

**Count #** 3 through 9
18 USC §§1343, and 2
Wire fraud
**Max. Penalty:** 0-20 years imprisonment, $250,000.00 fine
=================================================================

**Count #** 10 through 18
18 USC §§1341, and 2
Mail fraud
**Max. Penalty:** 0-20 years imprisonment, $250,000.00 fine
=================================================================

**Count #** 19
18 USC §1956(h)
Conspiracy to commit money laundering
**Max. Penalty:** 0-20 years imprisonment, $500,000.00 fine or 2x value of laundered funds
=================================================================

**Count #** 21 through 24
18 USC §§1956(a)(1)(A)(i), and 2
Promotion money laundering
**Max. Penalty:** 0-20 years imprisonment, $500,000.00 fine or 2x value of laundered funds
=================================================================

Count # 27
18 USC §§1956(a)(1)(A)(i), and 2
Promotion money laundering
**Max. Penalty:** 0-20 years imprisonment, $500,000.00 fine or 2x value of laundered funds
=================================================================

**Count #** 29 through 33
18 USC §§1956(a)(1)(A)(i), and 2
Promotion money laundering
**Max. Penalty:** 0-20 years imprisonment, $500,000.00 fine or 2x value of laundered funds
=================================================================

*Refers only to possible term of incarceration, does not include
possible fines, restitution, special assessments, parole terms,
or forfeitures that may be applicable.

**Additional booking information on Won Sok Lee:**

Aliases:

**Ming Than  Moh, or Michael James Moh**
dob 08/23/71; place of birth, Rangoon, Burma,
Height 5' 8"; weight: 180 lbs
[possible Burmese or Myanmar passport]


**Dan Jei Quon**,
dob 8/25/71    **[note different birthday]**
Height: 5'8"; weight: 180 lbs
[possible Hong Kong, British Hong Kong, or British passport]